HENRY CHAPMAN *et al. versus* EPHRAIM SEARLE,
Administrator of George Whiting.

The defendant gave to L a bill of parcels of certain goods, and a certificate that he
held them for L on storage. The bill was receipted, L having given his negotiable
note for the amount. Afterwards L offered to cancel the contract, if the defend-
ant would return the note; to which he agreed. The note was then in a bank,
having been discounted for the defendant, but some days afterwards the defendant
tendered it to L and requested him to cancel the contract; but L had in the mean
time assigned the goods to the plaintiffs, his creditors, informing them however of
the conversation relative to cancelling the contract. In *trover* by the assignees it
was *held*, that the defendant was estopped to say he never had any such goods; that
the property vested in L; that the defendant had no lien for the price of the goods;
that the contract was not rescinded, it having been executed; and that there was
no resale to the defendant, but at most only a conditional agreement to reconvey,
which not being in writing, &c., was void by the statute of frauds.

THIS was an action of *trover* for 300 barrels of beef.

The plaintiffs produced in evidence a bill of parcels to
R. C. Ludlow, of 300 barrels of beef, signed by Whiting,
with a receipt in full for the amount on the bill, dated the
1st of January, 1822 ; also a certificate of the same date,
stating that 300 barrels of beef were received by Whiting on
storage for Ludlow. The payment was made by a promissory
note payable to Whiting or order. The plaintiffs produced
also one part of an indenture, dated the 30th of June, 1822,
by which Ludlow had assigned to the plaintiffs as trustees
to his creditors, parties to the indenture, all his goods and
effects, and among other things 300 barrels of beef. At
the time of executing this instrument Ludlow was insolvent,
and the assignment was made *bonâ fide* with a view to an
equitable distribution of his effects among his creditors. The
note before mentioned was represented among the debts due
from him.

The plaintiffs proved also a demand upon the defendant for
the beef, and a refusal to deliver it, before the commence-
ment of the suit, the plaintiffs having tendered the sum due
for the storage.

Ludlow, being called as a witness by the defendant, testi-
fied that he bought the beef and took an obligation for the
delivery of it, according to the bill of parcels and certificate

Chapman
v.
Searle.

before mentioned ; that on the 8th of June, 1822, he gave an order for the beef to M. Bicker, agent of T. K. Jones & Co., but that a delivery was refused ; that Whiting soon after called on him, and the witness then asked him if he would return the note and cancel the contract ; to which he assented. The price of beef at that time was lower than at the time when the contract was made. The note was then in the State bank, having been discounted on the indorsement of Whiting, so that the cancelling did not then take place, but the witness understood that the bargain was to be cancelled whenever the note should be brought to him. On the 4th of July the note was tendered to him, and a demand made to give up the contract, but the witness having then made his assignment, his assignees replied that the business was out of his hands. At the time when the assignment was made the witness informed the assignees of the conversation relative to cancelling the contract, and stated also that no beef had been actually delivered, but that he had made the contract through the intervention of a broker. The papers were given by him to the assignees about ten days after the assignment was executed.

One Stickney, called also by the defendant, testified that he saw the note tendered to Ludlow ; that Whiting said he had come to exchange according to agreement, and Ludlow replied that it was out of his power ; that Whiting then asked him if he had not agreed to keep the papers until he should bring him the note, and Ludlow replied in the affirmative ; and that Ludlow further said, that he could not get along with his creditors without doing as he had done. Ludlow had written on the back of Whiting's certificate the words, " under Boylston market." Stickney stated that Whiting had not, to his knowledge, any beef under Boylston market, but that he had considerable quantities in other parts of Boston.

All the foregoing testimony was objected to, as going to contradict the written evidence of the contract ; and another objection was made to the testimony of Stickney, that it re lated to conversations after the execution of the indenture.

It being a mere question of law upon the above facts, whether the contract was rescinded, and whether the plaintiffs

could recover upon any ground, the parties agreed to take the case from the jury and to be nonsuited or defaulted, according as the opinion of the Court should be upon the foregoing questions.

*D. A. Simmons* for the defendant. The contract of the 1st of January was a mere paper transaction. The bill of parcels and certificate must be taken together, and they amount only to an agreement to deliver beef. There was no delivery, actual or constructive. Brown's Law of Sale, 390 to 394, 446 ; 1 Bell's Comm. on Law of Scotland, *bk.* 2, *c.* 5, § 2. *no.* 127 ; Lawes on Charter-Parties, 492.

Before the assignment, Ludlow had given an order to Bicker, who had demanded the beef and been refused. Ludlow had then only a right of action, which was not assignable at law. The action therefore should have been brought in the name of Ludlow, and in that case Whiting might have sued the note given by Ludlow and have set off the judgment.

Before the assignment was made, the contract to deliver was rescinded. *Johnson v. Reed,* 9 Mass. R. 84 ; *Ward v Winship,* 12 Mass. R. 481 ; Brown's Law of Sale, 403.

The subject of the contract was described as beef under the Boylston market, but there was no beef there, so that it is impossible to say that the description applies to the beef for which this action is brought. Trover will lie only for a specific article, and the action should have been founded upon the promise. *Austin v. Craven,* 4 Taunt. 644.

Ludlow having failed, Whiting had a lien for the price of the beef.

*Cooke* for the plaintiffs. The contract of the 1st of January was free from ambiguity, and the parol evidence was inadmissible. *Hunt v. Adams,* 7 Mass. R. 518 ; *Jackson v. Sill,* 11 Johns. R. 201 ; *Stackpole v. Arnold,* 11 Mass. R. 33. By that contract the property vested in Ludlow, so that he might maintain trover. Whiting admitted that he held 300 barrels of beef at a stipulated storage, and that he would deliver them to Ludlow on demand. There was an executed delivery ; though trover will lie even when it is only constructive ; and the article was sufficiently designated to support an action of trover. 2 Powell on Contr. 63 ; *Bach v. Owen.*

Chapman
*v.*
Searle.

*March 18th.*

4

5 T. R. 409 ; *Mather* v. *Trinity Church*, 3 Serg. & Rawle, 513 ; *Wilkes* v. *Ferris*, 5 Johns. R. 335 ; *Chandler* v. *Betden*, 18 Johns. R. 157 ; *Hurry* v. *Mangles*, 1 Campb. 452 : *Elmore* v. *Stone*, 1 Taunt. 457 ; *Rugg* v. *Minett*, 11 East, 210 ; *Harman* v. *Anderson*, 2 Campb. 243 ; *Greaves* v. *Hepke*, 2 Barn. & Ald. 131 ; *Lucas* v. *Dorrien*, 1 B. Moore, 29 , *Phillimore* v. *Barry*, 1 Campb. 513 ; *Lansing* v. *Turner*, 2 Johns. R. 13 ; *Stonard* v. *Dunkin*, 2 Campb. 345 ; *Whitehouse* v. *Frost*, 12 East, 614 ; *Jackson* v. *Anderson*, 4 Taunt. 24 ; *Harding* v. *Carter*, 1 Park on Ins. (7th edit.) 4. The refusal of the bailee to deliver the beef upon demand made by Bicker could not prevent it from being assignable, and that demand alone was sufficient to support this action. *Ratcliff* v. *Vance*, 2 So. Car. Rep. 243 ; *Pattison* v. *Robinson*, 5 Maule & Selw. 105.

The contract was not rescinded. If there had been a valid agreement to rescind, the remedy for the defendant would have been an action for the breach of such collateral undertaking ; *Dow* v. *Tuttle*, 4 Mass. R. 414 ; but there was a proposition only, and not a contract to rescind. *Cooke* v *Oxley*, 3 T. R. 653 ; *Tucker* v. *Woods*, 12 Johns. R. 190. If there was an agreement, it was upon a condition which was not complied with. The returning of the note was a condition precedent. The agreement was unexecuted and was executory in its nature. *Heathcote* v. *Crookshanks*, 2 T. R. 24. It was void by the statute of frauds, not being in writing. *Hasbrouck* v. *Tappen*, 15 Johns. R. 200. It was void too for the want of consideration and mutuality. The note was not in Whiting's control, it having been discounted by the State bank, which might have maintained an action on it against Ludlow, notwithstanding this agreement. *Tucker* v. *Woods*, 12 Johns. R. 190. But however the agreement might have stood as between Whiting and Ludlow, it cannot affect third parties whose rights have intervened. *Smith* v. *Field*, 5 T. R. 402 ; *Barnes* v. *Freeland*, 6 T. R. 80.

There was no pretence for a lien before Ludlow's failure, and there could be none after.

*Simmons*, in reply, said that the statute of frauds does not apply to the rescinding of contracts. Phillipps on Evid. 444.

The assignees having knowledge of all the circumstances, they could take the property only to set it off against the note. The agreement to rescind was valid. It was founded on a sufficient consideration, it being mutually beneficial, and it was unconditional.

PUTNAM J. delivered the opinion of the Court. By the bill of parcels which the plaintiff produces, it appears that Ludlow purchased the goods of Whiting, and Whiting by his certificate acknowledges that he has the same on storage for Ludlow. These papers, unexplained and unimpeached, would leave no question but that the property was in Ludlow, and by his assignment it would pass to the plaintiffs upon the trusts therein contained.

The defendant has offered to prove that the papers do not exhibit the real transaction ; that it was merely a paper arrangement ; that no goods were sold and delivered, or held by Whiting on storage for Ludlow ; and he would draw the inference, that therefore Ludlow could not sell and transfer what he never had in possession either actually or constructively The great question is, whether such parol testimony is admissible.

43

We have been referred to *Austin v. Craven et al.*, 4 Taunt. 644, by the counsel for the defendant, and it is the strongest case we have seen on that side. The defendants had made a contract with one K, to sell him 200 hogsheads of sugar ; K assigned the contract to the plaintiff, who inquired of the defendants if they had 50 hogsheads of sugar belonging to K, which they would deliver to the plaintiff, and they said they had, and thereupon the plaintiff paid K for the sugar ; and it was held, that the plaintiff could not recover in trover, because the 50 hogsheads of sugar were not *in esse*.

This case at first view seems very like the case at bar, but upon more examination there will appear to be a great difference. In the case cited there was only a contract to sell, and not an actual sale of the sugar. In the case at bar there was an absolute sale, proved in the usual manner, and an acknowledgment of an executed delivery. It is true that the defendants, in the case cited, told the plaintiff they had the sugar belonging to K, and would deliver it, but that verbal acknowledgment might, as *Gibbs* J. observed, be explained by other

evidence, referable, it is presumed, to the contract of sale. In the case at bar, Whiting subscribed a writing acknowledging that he had the goods to keep for Ludlow on storage. As between him and Ludlow the writing must be taken to be conclusive evidence of the fact. Whiting was estopped to say that he had not these goods. Thus in *Hurry* v. *Mangles*, 1 Campb. 452, it was held by Lord *Ellenborough*, that if, after goods are sold, they remain in the warehouse of the vendor and he receives warehouse rent for them, the acceptance of the warehouse rent is a complete transfer of the goods to the purchaser ; that it is an executed delivery by the seller to the buyer, and the *transitus* is at an end.[1] So in the case at bar, Whiting, after giving Ludlow those papers, had no lien for the price of the goods.

But a case more like that at bar, upon the point now under consideration, is that of *Stonard* v. *Dunkin et al.*, 2 Campb. 344. There the plaintiff advanced £7500 to one Knight, who as collateral security gave an order on the defendants for some malt. They gave a written acknowledgment that they held the malt for the account of the plaintiff, and Lord *Ellenborough* held that the defendants were estopped to say that the malt was not the plaintiff's, after acknowledging that they held it for the account of the plaintiff.

The case of *Harding* v. *Carter*, at the sittings in Guildhall, Easter T. 1781, cited by Park on Ins. (7th ed.) 4, has a strong bearing upon the point of the estoppel. It was trover for two policies of insurance. The defendants were brokers and had written to the plaintiff, that they had got two policies

---

[1] *Noble* v. *Adams*, 7 Taunt. 59; *Hawes* v. *Watson*, 2 Barn. & Cressw. 540; *Cuming* v. *Brown*, 9 East, 506; *Rowley* v. *Bigelow*, 12 Pick. 307; *Lucas* v. *Dorrien*, 7 Taunt. 278; *S. C.* 1 B. Moore, 29; *Proctor* v. *Jones*, 2 Carr. & Payne, 532; Chitty on Contr. (3d Amer edit.) 115; *Manton* v. *Moore*, 7 T. R. 67; *Stoveld* v. *Hughes*, 14 East, 308; *Hollingsworth* v. *Napier*, 3 Caines's R. 182; *Pleasants* v. *Pendleton*, 6 Randolph, 473; *Bentall* v. *Burn*, 3 Barn. & Cressw. 423; *S. C.* 5 Dowl. & Ryl. 284; *Barney* v. *Brown*, 2 Vermont R. 374; *Tarling* v. *Baxter*, 6 Barn. & Cressw. 360; *Fletcher* v. *Howard*, 2 Aiken's (Vermont) R. 115; *Bloxam* v. *Sanders*, 4 Barn. & Cressw. 941 *Smith* v. *Surman*, 9 Barn. & Cressw. 561; *Harris* v. *Smith*, 3 Serg. & Rawle 20; *Chapman* v. *Lathrop*, 6 Cowen, 110; *Barrett* v. *Goddard*, 3 Mason, 107 *Foster* v. *Frampton*, 6 Barn. & Cressw. 107; Poth. De Propriété, *no.* 200 Dig. 41. 1. 9 6.

Chapman
v.
Searle.

effected, one on account of the plaintiff's clothes and wages, and the other on account of the owners, and that Mr. N. was the underwriter. A loss happened, and the defendant produced a policy underwritten by one I. S. upon the ship only, in which the plaintiff had no interest. Lord *Mansfield* held the defendants as the actual insurers. The defence set up was, that the letter was written by the defendants' clerk through mistake, and it was said that trover would not lie for that which never existed ; but his Lordship would not suffer the defendants to contradict their own representations.

There the representation was by an authorized agent, but in the case at bar by the party himself. We are satisfied that the parol testimony was not admissible. It was in direct con tradiction to the writing, which Whiting could not be admitted to deny.[1]

It was contended on the part of the defendant, that the contract was rescinded by the original parties before the plaintiff's title accrued. If our view of the case is correct, the contract was executed, and was not merely executory, and so it could not be considered as rescinded ; which must be understood as a discharging or cancelling of it while it remained to be performed.[2]

The case, stripped of the parol testimony, proves a sale and delivery by Whiting to Ludlow, an assignment by Ludlow to the plaintiffs, and a demand of the property of the defendant, who represents Whiting, with a tender of the price of the storage.

It has been contended however, that Ludlow paid for the

---

[1] As to the operation, by way of estoppel, of admissions and representa tions by parties, see *Russell* v. *De Grand*, 15 Mass. R. 35; *Hemmenway* v. *Bradford*, 14 Mass. R. 121; *Jewett* v. *Torrey*, 11 Mass. R. 219; *East India Co.* v. *Atkins*, Com. 346; *S. C.* 1 Str. 168; *South Sea Co.* v. *Bumstead*, 1 Eq. Ca. Abr. 76; *Stow* v. *Wyse*, 7 Connect. R. 214.

By agents, see 2 Stark. Ev. 57, 58; *Biggs* v. *Lawrence*, 3 T. R. 454; *Fairlie* v. *Hastings*, 10 Ves. 123; *Kahl* v. *Jansen*, 4 Taunt. 565 ; *Bentham* v. *Benson*, Gow, 45; *Langhorn* v. *Allnutt*. 4 Taunt. 511.

[2] *Perrine* v. *Cheeseman*, 6 Halst. 174; *Buel* v. *Miller*, 4 N. Hamp. R. 196; *Smith* v *Haynes*, 9 Greenl. 128; *Munroe* v. *Perkins*, 9 Pick. 298; *Lattimore* v. *Harsen*, 14 Johns. R. 330; *Dearborn* v. *Cross*, 7 Cowen, 48; *Fleming* v. *Gilbert*, 3 Johns. R. 528; *Keating* v. *Price*, 1 Johns. Cas. 22; *Erwin* v. *Saunders*, 1 Cowen, 250; *Le Fevre* v. *Le Fevre*, 4 Serg. & Rawle, 241

property by his note, which is still due, and that the defendant should be permitted to retain until the note shall be paid. The reasoning before stated, if correct, is an answer to that argument. The *transitus* was at an end.[1] Whiting had no other lien but for the storage, and that has been tendered.

Finally, it has been contended for the defendant, that there was a re-sale of the property by Ludlow to Whiting before the plaintiffs' title accrued. But upon a careful review of the evidence, we can perceive only an agreement to reconvey at some future time, and upon certain conditions, which were never complied with before Ludlow was obliged to assign all his property to the plaintiffs. The original parties were willing to have the note given up and the contract of sale cancelled; but when that agreement was made, on the 8th of June or soon after, the note was in the bank, having been placed there by Whiting, and the assignment was made to the plaintiffs before the 4th of July, when Whiting brought the note and offered to give it up to Ludlow. It was then too late; the necessities of Ludlow had compelled him to transfer all his property to the plaintiffs for the use of his creditors, and this property had not been divested from him. The original parties might have adopted a different mode. Ludlow might have re-sold the goods to Whiting unconditionally, taking an indemnity from him against the note; and the property would have vested in Whiting, in virtue of the agreement, without any re-delivery, the goods being already in his possession. Such is the provision of the civil law. "*Interdum*

---

[1] As there was nothing in the case to rebut the presumption of an absolute payment by the negotiable promissory note given by Ludlow, the doctrine of *transitus* seems inapplicable to the case, even supposing the beef to have been in a situation in which without such payment the right of stoppage would have continued. *Whitcomb* v. *Williams*, 4 Pick. 229; *Van Cleef* v. *Therasson,* *ante,* 14, note 3. See *Reed* v. *Upton,* 10 Pick. 522. In this last case a promissory note was given for the property purchased, but in the contract of sale it was stipulated, that the money should be paid on the delivery of the property, and this was held to be sufficient to rebut the presumption of absolute payment by the note. Our courts seem disinclined to take advantage of the doctrine they have established, touching the presumption of an absolute payment from the taking of a negotiable promissory note, and perhaps it may be found inconvenient to extend the doctrine beyond the cases to which it has already been applied.

*tıam sine traditione nuda voluntas domini sufficit ad rem* <span style="float:right">Chapman</span>
*transferendam ; veluti si rem, quam tibi aliquis commodaverit,* <span style="float:right">v.<br>Searle.</span>
*aut locaverit,* aut apud te deposuerit, postea aut vendiderit tibi,
*aut donaverit, aut dotis nomine dederit. Quamvis enim ex ea.*
*causa tibi eam non tradiderit, eo tamen ipso, quod patitur tuam*
*esse,* statim tibi acquiritur proprietas, perinde ac si eo nomine <span style="float:right">**46**</span>
tibi tradita fuisset." Just. Inst. *lib.* 2, *tit.* 1, § 43. But that
was not done. There was at most only an agreement to re-
convey the property when the note should be delivered up.
And that agreement was void by the statute of frauds. When
it was made, Ludlow was the owner, and Whiting was the
purchaser ; the value was more than £ 10 ; nothing was given
or received with intent to bind the bargain, or on account of
the goods to be sold, and there was no note or memorandum
in writing concerning the contract. So that the property le-
gally remained in Ludlow when he assigned all his effects to
the plaintiffs.

There is no objection to the form of the action, which, by
*St.* 1822, *c.* 90, may be maintained against an administrator.

The defendant must therefore be defaulted, and the judgmen.
is to be for the plaintiffs.